ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LUIS FERRER CAMPIS<br><br>Recurrente<br><br><br>v.<br><br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202400011 | REVISIÓN JUDICIAL procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 174151 (confinado núm.: GUE-14169)<br><br>Sobre: Denegatoria de libertad bajo palabra |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortíz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente.*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2024.

El 11 de enero de 2024, el confinado Luis Ferrer Campis (en adelante "Recurrente", "Sr. Ferrer Campis" o "confinado") compareció ante este foro, por conducto de su representación legal, mediante un recurso de *Revisión Judicial.* El recurrente nos solicita la revisión de la denegatoria a su solicitud de *Reconsideración,* resuelta por la Junta de Libertad Bajo Palabra de 12 de diciembre de 2023, notificada el 13 de diciembre de 2023, sobre la solicitud de revocación de la determinación en ratificar la no concesión del privilegio de libertad bajo palabra, contenida en la *Resolución* del 30 de agosto de 2023, notificada el 7 de noviembre de 2023. Mediante la referida Resolución, la Junta de Libertad Bajo Palabra (en adelante "JLBP" o "Junta") le denegó el privilegio al recurrente de salir a la libre comunidad y le ordenó que su caso se podría volver a considerar en septiembre de 2024.

Examinado el recurso ante nuestra consideración, así como el derecho aplicable, *confirmamos* la determinación emitida por la JLBP. Nos explicamos.

**I**

Según se desprende de los documentos unidos al expediente apelativo, el Sr. Ferrer Campis se encuentra en la Institución Correccional de Sabana Hoyos (Arecibo). El 20 de febrero de 2007 el Sr. Ferrer Campis fue sentenciado a cumplir una pena de reclusión consolidada de veintiséis (26) años por infracciones al Artículo 142 (agresión sexual), al artículo 170 (secuestro agravado) y al artículo 109 (agresión agravada) del Código Penal de Puerto Rico del 2004; además de infracciones artículo 5.05 (portación y uso de arma blanca) de la Ley de Armas de Puerto Rico del 2000.

La fecha de cumplimiento máximo de su sentencia se cumple el 12 de diciembre de 2030. Para el 21 de octubre de 2022 el recurrente presentó el *Informe Para Posible Libertad bajo Palabra*, recibido por la JLBP el 27 de octubre de 2022. El recurrente cumplió el mínimo de su sentencia el 11 de marzo de 2023, fecha en que la JLBP adquirió jurisdicción para considerar al señor Ferrer Campis para el disfrute de este privilegio de libertad a prueba.

Luego de varios trámites procesales, el 26 de octubre de 2023 se rindió el *Informe del Oficial Examinador*. Del referido informe surge que, luego de evaluar la documentación del expediente administrativo, a saber, los informes, evaluaciones y expedientes que fueron referido por el Departamento de Corrección y Rehabilitación (en adelante "DCR"), se alcanzaron las siguientes *Determinaciones de Hechos*:

1. El peticionario se encuentra cumpliendo sentencia por infracción a los Arts. 142 (agresión sexual), 160 (secuestro agravado) y 109 (agresión grave) del Código Penal; y por infracción al art. 5.05 (portación y uso de arma blanca) de la Ley de Armas, según enmendada.

2. Conforme a la totalidad del expediente, tentativamente extingue su sentencia el 12 de diciembre de 2030.

3. El peticionario se encuentra en nivel de custodia de mínima seguridad desde el 6 de febrero de 2023.

4. El peticionario por la naturaleza del delito cometido fue referido al negociado de Rehabilitación y Tratamiento tomando la terapia en el 2018. En la Vista de consideración celebrada el Técnico de Servicio Sociopenal que nos asistió, Tania González Colón, indicó que el 15 de mayo de 2023 el peticionario fue referido nuevamente Sección Programa de Evaluación y Asesoramiento (SPEA) para ser reevaluado por lo remoto de su primera evaluación.

5. El peticionario propone en su plan de salida oferta de trabajo y candidato para fungir como amigo consejero.

6. La vivienda propuesta para pernoctar por el peticionario fue investigada y resultó ser viable.

7. Al peticionario le fue realizada la prueba de ADN conforme al Artículo 8 de la Ley núm. 175 de 24 de julio de 1998, según enmendada el 27 de diciembre de 2015.

8. El peticionario culminó con la terapia Transformación de Patrones Adictivos el 15 de marzo de 2021.

El 4 de octubre de 2023, la Junta celebró una Vista de Consideración. Mediante *Resolución* del 3 de noviembre de 2023, notificada el 7 de noviembre de 2023, y luego de evaluar la documentación que obraba en el expediente, los informes, las evaluaciones y los expedientes referidos por el DCR, la Junta determinó no conceder el privilegio de libertad bajo palabra al señor Ferrer Campis. Según las *Determinaciones de hechos y conclusiones* formuladas por la Junta, el señor Ferrer Campis fue referido para una reevaluación ante el Negociado de Rehabilitación y Tratamiento (SPEA) ya que su última evaluación fue del 2018 y, por tanto, muy remota.

Como parte de su conclusión la JLBP dispuso que el caso del Sr. Ferrer Campis se puede reevaluar para septiembre de 2024, fecha para la cual el DCR deberá presentar un *Informe de Ajuste y Progreso* con el plan de salida debidamente corroborado.

Según la *Reconsideración* del señor Ferrer Campis suscrita el 27 de noviembre de 2023, este argumentó, en síntesis que: (1) en dos (2) ocasiones, solicitó a la JLBP que emitiera una orden al DCR para que el Negociado de Rehabilitación y Tratamiento (SPEA) lo reevaluara y que su solicitud fue ignorada; (2) que este asunto no fue atendido en la resolución de 3 de noviembre de 2023; y que (3) la evaluación psicológica de SPEA de 2018 que obra en el expediente administrativos era favorable, y que de la misma surge que no requería servicios adicionales, por lo que lo hacía acreedor de dicho privilegio. La solicitud de Reconsideración fue declarada *No Ha Lugar* el 12 de diciembre de 2023, notificada el 13 de diciembre de 2023.

Inconforme, el señor Ferrer Campis presenta su *Recurso de Revisión Administrativa*, el 11 de enero de 2024, por conducto de su representante legal. En la misma argumenta que cumple con todos los requisitos legales para que se le conceda el privilegio de libertad bajo palabra; que la JLBP no podía denegarle su concesión a base de la evaluación psicológica remota; y que por vía de excepción, como su sentencia es menor de 30 años, procede liberarlo y que se realice esa evaluación en la libre comunidad. Como señalamiento de error, señala lo siguiente:

**LA JUNTA DE LIBERTAD BAJO PALABRA ACTUO ARBITRARIA E IRRAZONABLEMENTE AL DENEGAR LA LIBERTAD DEL RECURRENTE, SIN QUE SURGAN [SIC] EXPEDIENTE O LA VISTA, FUNDAMENTOS PARA ELLO CONFORME LA LEY Y EL REGLAMENTO.**

Mediante *Resolución* de 23 de enero de 2024, este Tribunal le concedió a la parte recurrida 30 días para presentar su Alegato en Oposición conforme la Regla 63 del Reglamento del Tribunal de Apelaciones.

La JLBP presento su alegato en oposición titulado *Escrito en Cumplimiento de Resolución* el 12 de febrero de 2024.

Tras evaluar los planteamientos de las partes comparecientes, así como los documentos unidos a sus escritos, estamos en posición de resolver. Exponemos a continuación la norma de derecho aplicable a la presente controversia.

**II**

**A. *Junta de Libertad Bajo Palabra***

El sistema de libertad bajo palabra en Puerto Rico está contemplado en la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1501 *et seq.* (Ley Núm. 118), mediante la cual se crea la Junta de Libertad Bajo Palabra. Las autoridades, los deberes y poderes de la Junta están contenidos en el Artículo 3 de su legislación. 4 LPRA sec. 1503. Dicho cuerpo cuasi judicial tiene la facultad para concederle a una persona, convicta y sentenciada a pena de reclusión, cumplir la última parte de su pena fuera de la institución penal, sujeto al cumplimiento de las condiciones que la Junta le imponga. También, tiene la autoridad para denegar el privilegio, así como para revocarlo en determinadas circunstancias. *Maldonado Elías v. González Rivera,* 118 DPR 260, 275 (1987).

Este beneficio es un privilegio legislativo cuya concesión y administración se confía al Tribunal o a la Junta, respectivamente. Se trata de una medida penológica que disfrutan los convictos como parte de su tratamiento de rehabilitación y se considera que mientras disfrutan de este privilegio están técnicamente en reclusión. *Pueblo v. Negrón Caldero,* 157 D.P.R. 413 (2002). El Tribunal Supremo ha determinado que este privilegio se otorgará a un miembro de la población correccional siempre que redunde en el mejor interés de la sociedad y cuando las circunstancias establezcan que tal medida logrará la rehabilitación moral del confinado. *Cf. Pueblo v. Álvarez Rodríguez,* 154 D.P.R. 566 (2001); *Lebrón Pérez v. Alcalde, Cárcel de Distrito,* 91 D.P.R. 567 (1964).

En su Artículo 3, inciso a, la Ley Núm. 118, *supra*, establece las condiciones que debe satisfacer el confinado para disfrutar del privilegio. En lo pertinente, este Artículo establece que el privilegio de libertad bajo palabra será en el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza, que tal medida habrá de ayudar a la rehabilitación del delincuente. Para ello, la Junta considerará toda la información posible sobre el historial social, médico, legal, ocupacional y delictivo de cada confinado, así como la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter el Departamento de Corrección y Rehabilitación. También, la opinión de las víctimas del delito cometido por el confinado forma parte de la evaluación que realiza la Junta.

Para el adecuado ejercicio de tal discreción, es decir, de la determinación de si procede o no el privilegio, la Junta ha promulgado varios reglamentos, entre ellos, el *Reglamento Procesal de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 7799, según enmendado, conforme lo requiere el debido proceso de ley. *Soto v. Srio. de Justicia*, 112 DPR 477, 499-500 (1982). De esta manera, se definen, por reglamentación, los contornos de la acción de la Junta al determinar si concede o no el privilegio de libertad bajo palabra. Asimismo, la reglamentación pertinente evita una aplicación arbitraria y discriminatoria por parte de los funcionarios llamados a conceder o no el privilegio, a saber, los miembros de la Junta.

Los criterios de elegibilidad que guían el ejercicio de la discreción investida en los miembros de la Junta están establecidos en el Artículo 3-D de la Ley Núm. 118, 4 LPRA sec. 1503d, a saber:

(1)  La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2)  Las veces que el confinado haya sido convicto y sentenciado.

(3)     Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4)     La totalidad del expediente penal, social y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5)     El historial de ajuste institucional y del historial social y psicológico del confinado, preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6)     La edad del confinado.

(7)     El o los tratamientos para condiciones de salud que reciba el confinado.

(8)     La opinión de la víctima.

(9)     Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10)    Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11)    Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

La sección 9.1 del Reglamento Núm. 7799 aborda los criterios de elegibilidad a ser considerados por la Junta al momento de evaluar, caso a caso, las solicitudes del privilegio, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión:

1.     Historial delictivo

   a.     La totalidad del expediente penal.

   b.     Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.

   c.     No se tomarán en consideración aquellos delitos en los cuales hayan transcurrido cinco (5) años desde que el peticionario cumplió la sentencia.

   d.     Naturaleza y circunstancias del delito por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.

   e.     Si cumplió con el pago de la pena especial de compensación para víctimas de delito,

dispuesta en el Artículo 49 — C del Código Penal de 1974[6], en los casos que aplique.

    f.     Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el gobierno federal y/o del Servicio de Inmigración y Naturalización.

        i.     El sólo hecho de que exista una orden de detención contra un peticionario no será fundamento para denegar la libertad bajo palabra, siempre y cuando el peticionario cumpla con todos los demás criterios.

2.     Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.

3.     La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.

    a.     La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.

4.     La edad del peticionario.

5.     La opinión de la víctima.
    a.     La opinión de la víctima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.

6.     El historial social

    a.     Se tomará en consideración la totalidad del expediente social.

    b.     Si anteriormente ha estado en libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

        i.     Cumplimiento y ajustes institucionales[.]

        ii.     Si se le revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

        iii.     No se tomará en consideración una revocación si han transcurrido tres (3) años desde la fecha en que se revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

    c.     El historial de ajuste institucional y el historial social preparado por la Administración de Corrección.

---

[6] Artículo 61 del Código Penal de 2012.

     d.    Si se le han impuesto medidas disciplinarias, disponiéndose que no se tomarán en consideración aquellas medidas disciplinarias en las cuales ha transcurrido un (1) año desde la fecha en que se impuso dicha medida disciplinaria.

     e.    El historial de trabajo y/o estudio realizado en la institución.

7.    Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

     a.    El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.

     b.    Cuando el plan de salida propuesto sea fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico:

         i.    El peticionario proveerá la dirección física del lugar donde propone residir, de concederle la libertad bajo palabra, el nombre y número de teléfono de la persona con la cual residirá y su relación con el peticionario.

         ii.    La solicitud será tramitada por el Programa de Reciprocidad de la Administración de Corrección al Estado receptor para que éste proceda a investigar la información provista por el peticionario.

         iii.    No se aceptará un plan de salida fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico, hasta tanto no se presente la carta de aceptación del Programa de Reciprocidad.

     c.    No se aceptará un plan de salida ejecutable en un país que no tenga un tratado de reciprocidad con los Estados Unidos para la transferencia de personas en libertad bajo palabra o libertad a prueba.

     d.    Oferta de empleo y/o estudio.

         i.    Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios, adiestramiento vocacional o estudio y trabajo.

         ii.    La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:

             (a)    Nombre completo, dirección postal y física y teléfono(s) de la persona que ofrece el empleo.

(b) Nombre, dirección postal y física, teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo.

(c) Funciones que ejercerá el peticionario y el horario de trabajo.

iii. Los planes de estudio, incluyendo el adiestramiento vocacional y/o el programa de estudio y trabajo, se presentarán sometiendo la carta de aceptación de la institución educativa, con expresión del programa o facultad al cual ingresará.

iv. La falta de oferta de empleo o estudio no será razón suficiente para denegar el privilegio si el peticionario cumple con los demás criterios.

v. Se exime de presentar una oferta de empleo o estudios en aquellos casos en que el peticionario padezca de alguna incapacidad física, mental o emocional, debidamente diagnosticada y certificada por autoridad competente.

e. Residencia

i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.

ii. De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

iii. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto no provea una residencia alterna viable, y así lo autorice la Junta.

iv. Para determinar si la vivienda propuesta es viable, la Junta considerará:

> (a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.
>
> (b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.
>
> (c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.
>
> (d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito. (e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.
>
> (e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.
>
> (f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

f. Amigo consejero.

  i. El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad en la rehabilitación del peticionario.

  ii. Requisitos

> (a) No tener relación alguna de afinidad o consanguinidad con el peticionario. A manera de excepción, esta prohibición no aplicará en aquellos casos que la Junta, en el ejercicio de su discreción, entienda meritorio a base de las circunstancias particulares del caso.
>
> (b) No ocupar un puesto o cargo electivo, ni estar activo en la política partidista.
>
> (c) No ser o haber sido representante legal del peticionario en cualquier proceso judicial o administrativo.
>
> (d) Tener la mayoría de edad[.]
>
> (e) Tener contacto frecuente con el peticionario[.]

        (f)      Ser una persona de integridad moral.

        (g)      No tener historial delictivo

iii.      Se realizará una investigación en la comunidad sobre la conducta e integridad moral de la persona propuesta para amigo consejero.

iv.      No se requerirá cumplir con el requisito de amigo consejero en aquellos casos en que el plan de salida propuesto consista únicamente en ser ingresado a un programa interno.

8. Historial de salud

    a.    Se tomarán en consideración todos los informes emitidos por cualquier profesional de la salud mental, que formen parte del historial psicológico preparado por la Administración de Corrección y/o el historial psiquiátrico preparado por Salud Correccional, según apliquen.

    b.    Historial médico del peticionario
    c.    Tratamientos para condiciones de salud que haya recibido o reciba el peticionario.

        i.      Estos tratamientos incluyen los relacionados al control de adicción a sustancias controladas y/o alcohol, control de agresividad, y cualquier otro tratamiento trazado por la Administración de Corrección.

        ii.      También se tomará en consideración la necesidad de que el peticionario se beneficie de algún tratamiento, en los casos en que no haya recibido alguno.

        iii.      Se requerirá haber tomado y culminado en la institución el Programa de Aprendiendo a Vivir sin Violencia a los peticionarios que cumplan pena de reclusión por los siguientes delitos:

        (a)      Asesinato

        (b)      Agresión Sexual mediante empleo de fuerza o intimidación

        (c)      Secuestro

        (d)      Los delitos tipificados en la Ley de Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, que impliquen grave daño corporal.

        (e)      Aquellos delitos graves en los cuales se utilice cualquier tipo de arma, según estas se definen

en la Ley de Armas, Ley Núm. 404 de 11 de septiembre de 2000, según enmendada.

iv. No obstante lo anterior, la Junta podrá requerir que un peticionario se beneficie del Programa Aprendiendo a Vivir sin Violencia cuando el caso presente circunstancias extraordinarias que lo ameriten, independientemente del delito por el cual cumple sentencia de reclusión.

9. Si se registró en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, en aquellos casos en que el peticionario cumpla sentencia por alguno de los delitos identificados en el Artículo 3 de la Ley Núm. 266 de 9 de septiembre de 2004, según enmendada.

10. Cumplimiento con la toma de muestra de ADN, en aquellos casos en que el peticionario extingue sentencia por alguno de los delitos identificados en el Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada.

11. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.

### B. Revisión Judicial de Determinaciones Administrativas

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, resuelto el 20 de enero de 2023. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial

que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, estas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde*, supra. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la

aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

### III

De nuestro minucioso y ponderado análisis de la totalidad de la evidencia que forma parte del expediente administrativo y conforme al derecho aplicable, resolvemos que la Junta de Libertad Bajo Palabra actuó correctamente al denegarle al recurrente el privilegio de extinguir su sentencia en libertad bajo palabra.

Es nuestro criterio que la decisión del foro recurrido está fundamentada en el mandato de ley que le fue encomendado por el legislador y en el ejercicio de la amplia discreción que le ha sido reconocida para decretar y revocar la libertad bajo palabra de cualquier persona recluida en las instituciones penales de Puerto Rico.

El recurrente no ha derrotado la deferencia que merece la decisión emitida por la Junta de Libertad Bajo Palabra, como el organismo administrativo cuasi judicial cuya finalidad es la rehabilitación del confinado, pero salvaguardando los mejores intereses de la sociedad y las víctimas de delito. Este no ha podido establecer que en el récord administrativo existe otra prueba que menoscabe el valor probatorio de la evidencia sustancial en la que está fundamentada la Resolución recurrida. Del mismo modo, que tampoco ha podido demostrar que la Junta incurrió en una aplicación errada del derecho.

Por el contrario, hemos encontrado que la decisión emitida por ese organismo está basada y fundamentada en la evidencia sustancial que obra en el récord administrativo y en el "expertise" que se le reconoce a la Junta de Libertad Bajo Palabra en la aplicación e interpretación de su Reglamento, *supra.* Según hemos constatado en el expediente ante nuestra consideración, la solicitud del recurrente, presentada ante la Junta no cumplió con los criterios y los documentos requeridos en el Artículo IX, del Reglamento Número 7799, *supra,* para que su caso pudiera ser considerado para recibir el privilegio de extinguir su sentencia en libertad bajo palabra. Además, la víctima del delito cometido por el confinado fue entrevistada y la misma formó parte de la evaluación que realiza la Junta, la cual tiene un gran peso y valor importante para su determinación.

A base de la evidencia sustancial que obra en el expediente administrativo, no tenemos duda alguna de que la Junta de Libertad Bajo Palabra consideró y aplicó adecuadamente los criterios establecidos en el Reglamento Número 7799, *supra,* en el ejercicio de la discreción que le ha sido conferida. Ante la ausencia de prueba que establezca que ese foro actuó de forma arbitraria, ilegal, irrazonable, fuera de contexto o huérfana de evidencia sustancial,

estamos obligados a reconocer la deferencia que merece la Resolución en la que Junta de Libertad Bajo Palabra le denegó al recurrente el privilegio de libertad bajo palabra.

**IV**

Por los fundamentos antes expuestos, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones